UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM MARK FRANKS,<br><br>        Plaintiff,<br><br>    vs.<br><br>SERGEANT KIRK, *et al.*,<br><br>        Defendants. | Case No. 1:15-cv-00401- EPG (PC)<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 46)<br><br>ORDER SETTING STATUS CONFERENCE |

**I.    INTRODUCTION**

Tom Mark Franks ("Plaintiff") is proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case is proceeding on Plaintiff's Eighth Amendment claim for failure to protect against Defendants Kirk, Wygt and Mauldin. (ECF No. 17.) Plaintiff's First Amended Complaint ("1AC"), (ECF No. 16), alleges that Plaintiff sustained severe injuries when he was attacked by another inmate when Defendants were aware of a previous altercation between Plaintiff and the same inmate.

Defendants have filed a motion for summary judgment arguing that undisputed facts demonstrate that they were not deliberately indifferent to an excessive risk to Plaintiff's health or safety. (ECF No. 46-1.) Because the Court finds that material disputes of fact remain, the Court denies Defendants' motion for summary judgment.

1

## II. PROCEDURAL BACKGROUND

Plaintiff filed the Complaint commencing this action on March 2, 2015 in the U.S. District Court for the Northern District of California. (ECF No. 1.) The case was transferred to this District on March 10, 2015. (ECF No. 4.) On April 12, 2016, the Court entered a screening order pursuant to its authority in 28 U.S.C. § 1915A and dismissed the Complaint with leave to amend. (ECF No. 15.) On May 9, 2016, Plaintiff filed the 1AC alleging additional facts related to his failure to protect claim. (ECF No. 16.) The Court screened the 1AC on September 6, 2016, and found that service of the 1AC was appropriate. (ECF No. 17.)

Defendants filed the instant motion for summary judgment on August 31, 2017. (ECF No. 46.) Plaintiff filed a response in opposition to the motion on September 28, 2017. (ECF No. 50.) On October 5, 2017, Defendants filed a reply in support of their motion for summary judgment. (ECF No. 52.)

## III. ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff was detained at Modesto Public Safety Center/Jail on October 25, 2014. One and a half years before that date, inmate Joe Dixon had pulled a razor-knife on Plaintiff and the two were separated for safety. Three weeks prior to that date, Plaintiff told Defendant Deputy Wygt about the prior knife incident and asked not to be in the same cell with Inmate Dixon. Plaintiff also wrote to Defendant Sergeant Kirk and asked for a change of cell classification. Several of Plaintiff's requests were intercepted by Defendant Deputy Mauldin. Despite these notifications, Plaintiff was housed with inmate Dixon. On October 25, 2014, Inmate Dixon attacked Plaintiff and cut him several times, until inmate Dixon was shot to stop the attack.

Defendant Kirk specifically had access to Plaintiff's entire history, including the prior incident with Inmate Dixon. Defendant Wygt was verbally told about the problem by Plaintiff. Defendant Mauldin failed to forward emergency requests. Plaintiff alleges "All 3 knew of the previous incident, the danger I was in by being in a cell again with Inmate Dixon, yet did nothing to remove me from a cell with him, and ignored/denied all my requests for help."

\\\
\\\

## IV. DISCUSSION

**A. Motion for Summary Judgment Legal Standard**

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). "Once the moving party meets its initial burden, the non-moving party must 'go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"" *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. "Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment" or make credibility any determinations. *Zetwick*, 850 F.3d at 441 (citing *Tolan v. Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Rule 56 does not require that the absence of any factual dispute. *See Hanon v. Dataproducts Corp*., 976 F.2d 497, 500 (9th Cir. 1992). Rather, there must be no *genuine* issue of *material* fact. *Id*. (emphasis as in original) (quoting *Anderson v. Liberty Lobby, In*c., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Zetwick*, 850 F.3d at 441 (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015); *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

"On the other hand, the Supreme Court has made clear: 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Id*. (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### B. Failure to Protect Legal Standard[1]

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Id.* at 833; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials

---

[1] It is noted that Plaintiff was convicted of a felony criminal offense on October 10, 2014. (DSUF1) Prior to that time, Plaintiff was a pretrial detainee.

Depending upon Plaintiff's status as pretrial detainee or convicted prisoner, a different provision of the U.S. Constitution is applicable. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831, 197 L. Ed. 2d 69 (2017) ("Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction)"). The applicable legal standard for a failure to protect Due Process claim differs from the applicable legal standard for a failure to protect claim based upon the Cruel and Unusual Punishment Clause. *See id*. at 1071 (summarizing caselaw and concluding that, while an Eighth Amendment claim requires both a showing of subjective and objective elements to show deliberate indifference, "a pretrial detainee who asserts a due process claim for failure to protect [is required] to prove more than negligence but less than subjective intent—something akin to reckless disregard").

For purposes of the instant motion for summary judgment, the Court applied the Eighth Amendment legal standard because summary judgment was inappropriate under either test and "the due process rights of a pretrial detainee are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id*. at 1067 (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)).

The parties should be prepared to present argument as to which legal standard is applicable at trial.

to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. *See Farmer*, 511 U.S. at 847; *Hearns*, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." *Farmer*, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. *Id.* at 843 (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Farmer*, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id.* at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Id.* at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

**C. Analysis**

Defendants argue that they are entitled to summary judgment because they were not aware of facts from which an inference could be drawn that Plaintiff was at risk of serious harm from Dixon. They contend that "[i]n a jail setting, there is always a risk that inmates will get in fights, but that risk was no greater for plaintiff and Dixon than any other inmates." (ECF No. 46-1 at 2.) Defendants point to the facts that Plaintiff and Dixon wanted to be housed together and that they were housed together for three weeks prior to the incident without any problems.
\\\

5

*i. Defendants' Evidence*

Defendant Wygt has submitted a declaration in support of summary judgment declaring that Plaintiff asked to be housed with Dixon on October 4, 2014. (Wygt decl., ECF No. 46-4 ¶ 4.) Wygt further states in his declaration that:

> At the time, Franks and Dixon were not housed together because of an incident that occurred in 2012 in which Franks reported to jail staff that Dixon had a weapon. I asked Franks about that issue and he told me they now got along and wanted to be housed together. I then spoke with Dixon who confirmed he wanted to house with Franks and that they got along fine. Based upon the inmates' requests and statements that they no longer had any problems with each other, I approved housing the two in the same cell.
>
> If staff, myself included, know that an inmate poses a risk of harm to another inmate, they will keep the inmates separated. This is not an unusual situation. It is also not unusual for inmates that did not get along to "patch things up" to the point where they can be housed together.
>
> My decision to house Franks and Dixon together was based upon their statements that they wanted to be housed together and that they got along. I saw no reason not to grant the requests and was unaware of any ongoing issues between the two. I certainly did not know or anticipate the two would end up in a fight three weeks later.
>
> From October 4, 2017, until October 25, 2014, there were no problems or issues involving Franks and Dixon. I had no reason to believe either inmate was a threat to the other. If I was aware of any facts indicating that the two might get in a physical altercation, I would have taken appropriate steps to separate them.

(*Id.*)

Next, Defendant Mauldin has submitted a declaration stating that he reviewed Plaintiff's housing assignment on October 15, 2014 and determined it to be acceptable because he was unaware of any issues between Plaintiff and Dixon. (Mauldin decl., ECF No. 46-5 ¶ 4.)

Finally, Defendant Kirk declares that he was not involved in the decision to house Plaintiff and Dixon together, and this decision was made by Defendant Wygt. (Kirk decl., ECF No. 46-6 ¶ 5.) Defendant Kirk further attests that he reviewed all of the "kites" (inmate concerns communicated to staff in writing) from May of 2012 to December 2014, and Plaintiff

"did not submit any written complaints prior to October 25, 2014, regarding issues with Dixon." (*Id*. ¶ 6.)

### ii. Plaintiff's Evidence

Plaintiff has submitted declarations in opposition stating that in August 2012, Modesto Jail staff suspected that Dixon was going to assault Plaintiff. (Plaintiff decl., ECF No. 50 at 13 ¶¶ 3-4.) (*Id*. at 1 ¶ 1.) Dixon was charged with possession of a weapon after staff found a shank, and a "keep-away order" was placed informing all staff that Plaintiff and Dixon should not be housed together. (*Id*.) The order was removed on October 4, 2014, and Plaintiff and Dixon were housed together again until October 25, 2014, when Dixon attacked Plaintiff with a knife and seriously injured him. (*Id*. at 1-2 ¶ 2.)

With respect to the defendants in this case, Plaintiff attests that: 1) Plaintiff never asked at any time in 2014 to be housed with Dixon, 2) prior to the housing assignment, Plaintiff told Wygt about the prior 2012 incident, 3) Plaintiff protested the housing assignment but was told that he had no choice, and 4) for the three weeks Plaintiff was housed with Dixon, Plaintiff wrote several requests to Defendant Kirk asking to be moved. (*Id*. at 13 ¶ 3.) Plaintiff received no response from Defendant Kirk after requesting to be moved out of the cell with Dixon. (*Id*. at 2 ¶ 4.) "Several of Plaintiff's requests to move were intercepted and blocked by deputy Mauldin, who failed to forward his emergency requests." (*Id*.)

### iii. Triable Issues Remain

The testimonial evidence submitted by the parties is in clear conflict. Defendant Wygt declares that he was unaware of a risk to Plaintiff's safety while Plaintiff states he expressly told Defendant Wygt that he objected to the housing assignment because of his prior history with Dixon. Defendant Mauldin similarly states that he was unaware of any risk to Plaintiff's safety while Plaintiff attests that Defendant Mauldin intercepted and blocked several of his emergency requests to be moved to another cell. Defendant Kirk claims that he never received a kite from Plaintiff disputing the housing assignment while Plaintiff claims that he sent Defendant Kirk multiple emergency requests to be moved prior to the attack.

On summary judgment, the Court may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513–14 (providing that, on summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Furthermore, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. (citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970)). As a reasonable juror drawing all inferences in favor of Plaintiff could return a verdict in his favor on his failure to protect claim, summary judgment is inappropriate in this case. *See Zetwick*, 850 F.3d at 441.

## V. CONCLUSION AND ORDER

Accordingly, the Court ORDERS as follows:

1. Defendants' motion for summary judgment (ECF No. 46) is DENIED;

2. The Court sets a Telephonic Status Conference for February 28, 2018 at 1:30 p.m. in Courtroom 10 (EPG) before Magistrate Judge Erica P. Grosjean. The Court grants telephonic appearances at said conference and directs the parties to use the following dial-in number and passcode: 1-888-251-2909; passcode 1024453;

3. Plaintiff's institution of incarceration is ordered to make Plaintiff available for the telephonic appearance. The Clerk is directed to send a copy of this Order to the litigation coordinator at Plaintiff's institution of incarceration so that arrangements can be made for his telephonic appearance at the February 28, 2018 Status Conference; and

4. All other hearings and deadlines set in this case currently remain in place and will be discussed further at the status conference.

IT IS SO ORDERED.

Dated: **February 9, 2018** /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE